523-1008 W.C. Baller Trucking v. Illinois Workers' Compensation Comm'n Mr. Jording, you may proceed. Thank you, Justice. May it please the Court, Counsel, my name is Jason Jording on behalf of the appellant in this matter. This matter is bigger in the record than it actually is on complexity of issues. Obviously, that's because we've got two commission cases, but I'm really only going to talk about one today. My theme is going to be credibility, as it so often is in these cases, but not just credibility of the doctors and the petitioner, but the credibility of the arguments that are being raised. I know counsel is going to bring up the statement I've made in the record, and I stand by. If the second commission decision had been entered first, it wouldn't be against the manifest way of the evidence. But the same is true with the first commission decision. The manifest way of the evidence standard is such that you can have two opposite decisions, and they both can be upheld. And in this case, what's undeniably true is that the first decision has sufficient factual basis that an opposite conclusion is not clearly apparent. It's undeniably true that what happened was the circuit court substituted its own judgment for the commissions in deciding it wanted to believe a different expert, and it wanted to believe petitioner. That's the honest truth of the situation. I understand counsel can't say that, because if he says that, he loses. So I get that. But there is no clearer case where there is plenty in the record to support the commission's first decision. Obviously, this court knows commission is the judge of credibility, commission weighs the medical, and that's what happened in the first decision. And what happened there is you have two doctors who testified, and you have a petitioner who testified. And the commission believed Dr. Soriano over Dr. Seible, and the commission found numerous reasons, which are supported in the record, why the petitioner was not credible. And what's important about petitioner's credibility, especially when we look at Dr. Seible's testimony, it's very stark, the difference between Dr. Seible and Dr. Soriano. Dr. Seible had very few records and said, I may have briefly perused them. That's his quote. So all of Dr. Seible's knowledge comes from those couple of records that he briefly perused in petitioner's history. And if petitioner's history is not credible, that undercuts the factual basis for Dr. Seible's opinions. As opposed to Dr. Soriano, who had significantly more records. I know I did the math, and if we just look at Dr. Seible's chart versus the medical that was put into evidence, Dr. Seible had less than 9% of the medical that was put into evidence. And Dr. Seible's lack of knowledge manifests in his opinion. Dr. Seible is on record saying he doesn't have left leg symptoms. My gosh, there's all kinds of places in the record where he has left leg symptoms. In fact, if we look at the most recent record of treatment from September of 16, that record quotes petitioner saying, my pain has moved from the right leg into the left leg. And that is replete through the records. Dr. Seible absolutely denies that. He says he doesn't have any left leg symptoms, never did. Well, Dr. Seible doesn't know he didn't have the records. Now, counsel is going to tell you, you should believe Dr. Seible because he's not a quote higher gun. Now, I disagree with that. And I think that the record is very clear. What we have is Dr. Seible gets this person sent to him by his attorney. And if we look, this comes down to the credibility of the arguments that are going to be presented to you today. We have absolutely a case where the attorney wanted a litigation report. That's just the plain fact here. He even says in his letter that if you give us the opinions we want, we'll have him treat with you. But it's conditioned on that. That's in the letter. And additionally, we have counsel for Mr. Hardwick guaranteeing payment to Dr. Seible. Now, obviously Rule 1.8E says if that's medical treatment, he can't do that. But if it's a litigation report, he absolutely can. And I choose to believe that just like we do all the time in comp, both on the petitioner and the respondent side, he had his guy examined. There's nothing amiss with that. What is amiss is then trying to subsequently paint the guy as not a hired gun and to put that bill for that litigation report into evidence and say respondent owes the money for my litigation report. How do we know it's a litigation report? Well, the dictation from Dr. Seible comes out and his office sends it to counsel and says, hey, we want to make sure we have everything in here you want. And what do we have? We have a letter back that says, no, you don't have everything in there I want. And they revise the note. That's just the plain fact from the deposition. Dr. Seible agrees. He looked at the letter and he revised his report to meet the litigation needs of Hardwick's counsel. Now, at the end of the day, I'm not going to tell you Dr. Seible is a bad guy because he's a hired gun. That's, I mean, again, in comp, everyone hires experts. In circuit court, in civil matters, we all hire experts. There's nothing amiss with that. What I look at is how much knowledge the doctors have, what is the actual basis underpinning those opinions? There is just no doubt in this case Dr. Soriano had more of the prior medical than Dr. Seible. Dr. Soriano knew what petitioner's symptoms were from day one through the end. Dr. Seible had a very small smattering of notes and then denied what was in the prior records. Dr. Seible said, you know, he doesn't have left leg symptoms. And just to address some points that counsel was going to bring up, he's going to say the commission was wrong because on the accident date he did have right leg symptoms. Dr. Seible doesn't agree with that. Dr. Seible makes a very, very sharp distinction between symptoms that come from the back versus symptoms that come from the leg. Dr. Seible believed the symptoms are coming from the leg, and he testifies there are no symptoms coming from the back. If we look at the very first record, day one, it's pain from the back radiating into the legs. And this is where the commission's expertise in medical makes a difference. They, you know, the case law tells us they are the medical experts as far as the facts go in the case. They made that distinction the same as Dr. Seible made. There is a difference between leg symptoms and back pain radiating into the legs. At the end of the day, the commission finds there's an accident and there's an injury. We're here talking about was that injury to the low back, which every other doctor but Dr. Seible agrees with? Or Dr. Seible says there was no injury to the back. This is a right SI joint. That's the issue here. Petitioner sees prior to Dr. Seible, and Dr. Seible doesn't know this because he doesn't have the records, sees Dr. Finesio, who's a neurosurgeon, sees Dr. Glasgow, a pain management doctor, goes to PT that's directed at petitioner's low back where petitioner reports relief. Dr. Seible doesn't know any of that, doesn't believe any of that because he doesn't have those records, and a petitioner did not give him that history. So Dr. Seible is absolutely handicapped by petitioner's credibility, and there's all kinds of places in the record that we can support the commission's finding of no credibility. I mean, pre-accident symptoms and treatment, that's like the number one thing for a respondent's attorney. And in this case, what does the letter to Dr. Seible say? Oh, he had one small event previously, and he needed no medical treatment. That's not what the record reflects. The record reflects that this individual had multiple low back injuries, and I realize 2014 sounds pretty remote to us, but we've got to remember that this is 2015 when this happens. In 2014, he has the exact same problem, low back pain radiating into the legs. He denies that at trial. What else does he do at trial? He denies all the medical records which reflect that he was having a normal examination. He denies that he complained of upper extremity symptoms. I don't know any doctor who's going to tell us that an SI joint causes upper extremity symptoms. He denies that at trial. Now, counsel's going to tell you, well, it's just a typo. Well, we know, first of all, he doesn't get to just make that bare statement. It was his job. If it's a typo, go get the evidence of that. But second of all, in the record, not only are there typed notes which reflect upper extremity complaints, there is a handwritten note from a different provider which records his upper extremity complaints. Now, I could potentially make a typo on my computer, but when I'm writing and I'm a different provider, I'm not making the same exact error as someone else did. So we know his complaints are varied. We know his complaints alternate between the legs. Counsel's going to tell you, oh, Soriano, he's wrong. He's wrong because he says he's got alternating complaints. Soriano explained in his deposition, he says, yeah, he's got pain right here in his right leg, but he also complains of left leg problems. That's absolutely undeniably true in the medical records. And, you know, between the guy who says all of my doctors were wrong before Dr. Seible, I didn't get any treatment, I didn't have any problems before, between him and the inherently reliable medical records, the choice is clear. The commission was allowed to make that choice. They were allowed to believe the medical records over Petitioner. They were allowed to believe Dr. Soriano over Dr. Seible. When we also look at, counsel's going to tell you that no doctor ruled out right SI joint problems before, but if we look at Dr. Seible's own testimony, I asked him the question, I said, we can presume from the treatment modalities that were prescribed, none of the other doctors believed SI joint was the genesis of the problems. Isn't that correct? And Dr. Seible says, yes, that's correct. So we know, based on Dr. Seible's own testimony, that the prior doctors did not find SI joint to be the genesis of the problems. They didn't even include it as a differential diagnosis. And, I mean, we're talking about the family doctor, the neurosurgeon, the pain management doctor, physical therapist. He had a pretty robust, varied provider amount of treatment. Not one of them came to the conclusion that Dr. Seible did. So that's why, when I asked the question, Dr. Seible said, so your diagnosis, it's a new diagnosis nine months later. Or I corrected myself, I said eight months after the accident. He says, correct, it's a new diagnosis. Well, I'll submit to the court, and the records support this, that Petitioner was having pain in his back as a result of the accident. And that's what the commission found. Petitioner has some kind of alternating leg complaints. Now, whether they're credible or not, the commission was able to judge that. The commission said no. The commission relied upon records which reflected his symptoms changed when he was distracted. They relied upon the Waddell's testing being clinically significant. They relied upon his disagreements with what all the records say. So that's easy. There's plenty of evidence in the record to support that Petitioner wasn't credible. I've also weaved in here the Seible versus Soriano. That's obviously, we generally say persuasiveness to be nice to the doctors. We don't say, well, this doctor's not credible. But it really is a credibility issue. And it's not that, again, Dr. Seible's not a bad guy. He just doesn't have the facts. And he lacks significant, even if it were just that. If the only thing we had in this case was the difference in the records Dr. Soriano had and the difference in the records that Seible had, that's a basis for the commission to believe Soriano over Seible that alone. Now, add to that that which doctor more accurately knows the medical. That's Dr. Soriano. He knows there's bilateral symptoms in the legs. He knows that there's arm complaints. Seible says no. So this all comes down to Soriano versus Seible and Petitioner's credibility and who is presenting the court the intellectually honest position. Soriano, the commission believed they had a basis to believe him. Credibility of Petitioner, the commission had a basis to find him not credible. With those things, there is no opposite conclusion apparent for the first commission decision. So based on that, and I see my time is short, based on that, unless there's questions, the one thing I would ask is that the second commission decision be vacated with the reinstatement of the first, which is well supported by Illinois.  Okay. Thank you. Mr. Stokes, you may respond. May it please the court, counsel. My name is Gary Stokes and I represent the defendant, Petitioner Mr. Hardwick. Let me begin my remarks with a riddle. What's the one thing that all wrong decisions have in common? What's the one thing that all wrong decisions have in common? Is it factual mistakes? Errors? No, not necessarily. Sometimes you can have a case where the standard of proof, proper standard of proof wasn't observed. Have a question of law. Is it questions of law in every wrong case? No. There's cases where you have factual mistakes only in a particular case. The answer of what do all wrongly decided cases have in common is that there is a corresponding correct decision. There is a right decision. This case is no different. The unusual thing here for you folks is that we have both the wrong decision and the right decision in front of you. The system worked. The system worked. The 2017 commission decision is wrong. It was wrong factually. There were egregious errors made in the decision. The 2023 decision is the correct decision. The system worked. How do we know the 2023 decision is the correct decision? Have you heard plaintiff make one claim of one error in that decision? No. Why not? Because it's correct. And there are no errors. The commission's 2023 decision is detailed. It's specific. It is thorough. And it is correct. In the same vein, counsel, can you hear me, counsel? Yes, sir. In the same vein, you might want to take up any potential problems with the commission's first decision. What's the problem with that decision? And I agree, judge, because that is, as it turns out in this case, plaintiffs only argue. They are not submitting that anything's wrong with the 2023 decision. And, again, just to end the comments on the 2023 decision, if you read it thoroughly, it is absolutely on point. The 2017 decision is factually incorrect. And the errors made in that decision are not straw men, as Judge Travers noted. These are big, significant, major issues in the case, as they are in any case. I have said before, and I'll say again, the 2017 decision was constructed on four pillars. Number one, that Hardwick, pillar number one, that Hardwick never experienced or complained of right leg pain on December 2nd, 2015. It's really the CAWA or Inspector Freight case in reverse. As you know, the Inspector Freight CAWA decision says, if you look at what the general state of health is of the petitioner before the accident, and look at the symptoms of that petitioner immediately after the accident, and that in and of itself is evidence of causal connection. The reverse argument is made here. In the 2017 decision, they're saying, well, since he never had any complaints of any pain or problems in the right leg, that mitigates against this being related, because that's what he was complaining of later in his treatment. Let me read from the decision. Quote, although petitioner testified he told the emergency room professionals that he had right leg symptoms, there is no evidence in the medical records of right leg symptoms on December 2. Is that correct? It's absolutely not correct. He saw two medical providers on the day of the accident, the ambulance personnel. I read from the ambulance report, pain in back, mid back, radiating down the right leg. I read from the emergency room, the only other medical provider he saw on the day of the accident, within an hour. Pain, level 10, in the back, the right hip, the right leg. Those notes were taken three different times by the emergency room nurse. Again, the decision in the 2017 decision, although petitioner testified he told the emergency room professionals that he had right leg symptoms, there's no evidence in the medical records of right leg symptoms on December 2. This novel argument the plaintiff now makes that radiation pain into the right leg is not right leg pain should be dismissed. It's clear that he had complaints of back and right leg pain on the day of the accident and it continued throughout his treatment. That pillar, if you will, of the symptoms don't match, fails. It crumbles. Both medical providers noted that. Number two, the second pillar. The arbitrator found that Dr. Sibley, in his second opinion, and I quote, Dr. Sibley admitted, this is a quote from the decision. Dr. Sibley admitted it was a new condition which did not exist when petitioner was examined by Dr. Fanesio, Dr. Glasgow, and Dr. Soriano. Is that a true statement? It is not. It is absolutely false. It's 180 degrees incorrect. If you read Dr. Sibley's deposition, he makes no bones about it. Yes, these are the same symptoms he had at the time of the accident and yes, they are related to right SI joint dysfunction, not lower back. The specific finding of the arbitrator upon which he relied is false. The second pillar of this decision falls. It fails. It crumbles. Under investigation of what counsel has many times referenced, the quote inherently reliable medical record. Because the inherently reliable medical record hasn't changed. The arbitrator got it 180 degrees wrong when he wrote his decision, but the fact of the matter is that Dr. Sibley never said those things. And by the way, all of these arguments about Dr. Sibley didn't have all the records. We went through that in the deposition specifically. He noted all of the records that he had been provided. I will admit this, that he says I don't typically rely on other doctors. I don't want to fog my analysis. I peruse the records, but he went through the list of everything he had. Counsel's argument that he only had 90% of the records. They subpoenaed the records and they claimed that the records that were provided from Dr. Sibley's office weren't all of the records. I don't know what happened between all of the mailings. All I can tell you is that we went through and specifically on purpose in the deposition of Dr. Sibley went through what he had. And he advised that he had all of the records, not part of the records. Two pillars have failed. The third pillar, all treating physicians prior to Dr. Sibley considered the SI joint dysfunction and ruled it out. Let me read, quote, from the decision of the arbitrator again. No diagnosis of SI joint dysfunction was rendered until August 29, 2016 by any doctor. And this is in parentheticals. In fact, having specifically been ruled out by petitioner's treaters, end quote. That is not true. Plaintiff, the petitioner, defendant Hardwick saw three doctors, count them three, before he got to Dr. Sibley. The one was his family doctor, Dr. Clooney. Dr. Clooney states twice that his primary pain appears to be in the right sacroiliac joint. The doctor said all of these conditions, she referenced other conditions as well, but said all of these conditions are work-related. Did Dr. Clooney then rule out SI joint dysfunction? Absolutely not. That's not true. That sentence and that decision of that arbitrator is 180 degrees false. Dr. Finesio, the neurosurgeon, never referenced SI joint dysfunction. I guess the plaintiff wants to argue, well, since he didn't mention it, he therefore ruled it out. Sorry, those are two different things. That never happened. And the only other doctor was Dr. Glasgow, who was sent there one time for one treatment. It was an injection, and that's it. He had an injection. There was no reference, although there was a positive notation on SI joint. Positive meaning negative, meaning that there's something going on there. That was in Dr. Glasgow's notes. But he was sent there. He was there to do one thing and one thing only, provide a steroid injection. That's what he did. Nobody said no SI joint dysfunction. That's false. That third pillar of the 2017 decision is demonstrably untrue, false, wrong. Number four, the fourth pillar that this decision was constructed on was the argument that Dr. Soriano's opinions versus Dr. Seidley. I know you've read the deposition of Dr. Soriano. There's an inference or suggestion in the rebuttal brief, I believe, that somehow that was not all that Dr. Seidley or Dr. Soriano based his opinions on. Read Dr. Soriano's report. He said he based his opinion on three things. Number one, the complaints of back and leg pain were, quote, delayed, end quote. Delayed? He complained about it to the ambulance personnel and to the emergency room personnel three or four times. How is that delayed? Dr. Soriano confessed at the deposition in his deposition transcript, I was wrong. It wasn't delayed. It wasn't delayed at all. The second thing Dr. Soriano relied upon in making his determination was that the symptoms alternated from right leg to left leg and back to right leg and then back to left leg. Not true. Again, the inherently reliable medical record that plaintiff has quoted so often proves that the symptoms in the right leg never went away. Not once. Not one iota. Never went away. It did not alternate. Yes, symptoms developed in the opposite side. I asked Dr. Soriano about that. And he wrote it off. He said it is referred pain. Orthopedic doctors use that all the time. It's referred pain. It's not unusual to get symptoms on the opposite side of the body from the side that has been injured. He said that's in his deposition. I didn't make it up. That was the second basis on which Dr. Soriano made his conclusion that Mr. Hardwick's condition was not related to the injury sustained in the accident. False. It was false. The third thing was whether hogs got out or not. Seriously. Seriously. Read his report. Whether the hogs got out of the trailer or not. He said that the one history suggested that the hogs got out of the trailer and Mr. Hardwick had to help him get them back in. And the other history was that the hogs didn't get out of the trailer. I can't explain that. You'll have to, I don't know, you'll have to come to your own conclusions about where Dr. Soriano found that to be relevant. The fact of the matter is he finally admitted that, yes, you can have inconsistencies in the histories provided when you're talking to very busy emergency room personnel and very busy ambulance personnel who are predominantly interested in making sure that the patient gets taken care of. Not so much about what happened, when it happened, and whether hogs got out of the trailer or not. The bottom line is that was the fourth pillar that has effectively been crumbled. These were big, significant issues. Judge Travers noted, these aren't straw men that Mr. Stokes set up. These were big significant mistakes in the decision. And so consequently, the errors were not minor. These were not things like, did he get a Toradol injection at the emergency room? Did he have a back injury eight years ago? Not even Dr. Soriano suggested that the problems that he was experiencing were attributable to anything in the past. I ask him, it's in the deposition. These are not questions about did he have a prior hernia or not. Every minor inconsistency in the record that's totally irrelevant, plaintiff has made to be a huge credibility determination. When the big issues, talking about the injury, the back, the leg, the arbitrator is wrong on every instance. Saying things that were demonstrably untrue in the record. That's what caught Judge Travers' attention, and that's why he said this decision is not correct. It's got to go back. And again, if you read the 2023 decision of the commission, how specific they are, how thoroughly they reviewed the record, what their conclusions were, that they didn't just, okay, it got remanded, we have to make a decision in favor of petitioner. That was, you cannot read that decision and come to that conclusion. They did their job. They did it very, very carefully and meticulously, and the decision is correct on all counts. I see my time's almost up here. It's kind of odd because I think we're really arguing about the first decision, so it seems like I should be on rebuttal, but I just ask that you recount my comments and ask that this case be sustained. Thank you, counsel. Any questions from the court? No? Okay, thank you.  Thank you, Justice. Counsel starts out by telling you you get a two-sided coin. If one is right, the other must be wrong. That's not the case with the manifest weight standard. You can have two decisions, and we know the commission can reach a conclusion that a reviewing court may not like, but it's not against the manifest weight of the evidence. It's not wrong. That two-sided choice is just not the law, and of course I'm not. He's absolutely correct in pointing out I'm not here to tell you 2023 is wrong because I'm intellectually honest about the truth of the standard, the standard of manifest weight, which the 2023 decision at this point would have that, but for that little problem, the 2017 decision, which is also entitled to that deference. And here, counsel says I'm making up tauntillos about credibility. I wasn't the judge of credibility. The commission is the judge of credibility. The commission is entitled to use things like not eight years ago, not back pain eight years ago, the year before, the commission is entitled when a guy testifies on the stand and says, nope, didn't have that problem, and the records prove him wrong, the commission is entitled to figure out, well, why is he lying to us? When he says I've never had upper extremity complaints, which are documented throughout the records numerous times, the commission is entitled to wonder why he's lying to them. When he submits bills for his preexisting hernia problem, which today everyone admits it was preexisting, it's not related, but he submits those bills to comp for payment, the commission is entitled to wonder why he's trying to get something paid for, which is not related to his case. That's what the commission is entitled to. Let's talk about these so-called mistakes. First of all, right leg pain. It's not a mistake. It's simply a mistake. Dr. Sibley agrees there is a difference between pain coming from the back and pain coming from the leg. In fact, when I asked Dr. Sibley, Hardwick doesn't have any symptoms from his low back, does he? Sibley says correct. That's SECC 575. So now counsel here today, in a world where his client got on the stand and said every doctor before Dr. Sibley mistreated me and misdiagnosed me, well, now he wants to go back to the day one records and say, no, they actually do support my client. His client doesn't believe that, and neither does Dr. Sibley. Dr. Sibley says he doesn't have any back pain, but the records say he does. Let's be very clear about what that record says. Pain in the back radiated. That's where the symptoms are. The symptoms are in the back. The commission within its province found that to be the case, and that's consistent with all the treatment up to Dr. Sibley. Not one doctor diagnosed, not one doctor put in their differential diagnosis SI joint. And, in fact, counsel brought up Dr. Glasgow. Well, if we look at Dr. Glasgow's notes, and I just pulled one of them, there's multiple, but SECC 424, SI joint, negative, within normal limits. That sounds like a doctor who's ruled it out, but don't take my word for it. Let's take Dr. ‑‑ I mean, he wants to go with Dr. Sibley. Let's take Dr. Sibley's word for it. I specifically asked Dr. Sibley, based on all that treatment those other doctors performed, did they believe there were any symptoms coming from the SI joint? And he says, no, they didn't. All the prior doctors diagnosed a back problem. That's Dr. Venizio, a neurosurgeon, Dr. Soriano, a neurosurgeon, Dr. Glasgow, a pain management doctor. Those are the prior specialists. But now Dr. Sibley, eight months later, with one visit. You'll remember, counsel said, well, he only had one visit with Dr. Glasgow. That's all he had with Dr. Sibley, a lawyer set up visit for a litigation exam. That's what happened. And what he needed was something else. He got his something else. But it's contradicted by all the prior records. New condition? Certainly. That's what Dr. Sibley says. All the other doctors did not believe the symptoms were coming from the SI joint. And Dr. Sibley, eight months later, does. The records. I don't know what to tell you either. His office certified that chart as true and correct. And when he says Dr. Sibley listed the records, that's exactly what counsel told you. And this goes down to our credibility. Counsel told you Dr. Sibley listed the records he had for review. Go look at that deposition. Counsel leadingly stated a bunch of records to which Dr. Sibley didn't have in his chart and couldn't tell us he reviewed. That's the truth here. So at the end of the day, the commission, I would submit, did not make factual errors at all. But let's say they did. Let's say there are some factual errors. The manifest way of the evidence doesn't care about that. But the manifest way of the evidence says, is there evidence in the record supporting the commission's decision? There's evidence that Hardick was incredible. There's evidence that Soriano was the more persuasive doctor. Unless there's questions, I appreciate the court's time. Thank you. We leave now? Are we done? Hi, everyone, we lost Justice Holdridge. I'm going to go ahead and escort you out of the courtroom. And your decision will be issued in due time.